IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ZERRICK MONET NAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:13-CV-645-WHA |
| | ) | [WO] |
| | ) | |
| SECURITY SERVICE OFFICER | ) | |
| CHRIS FAISON, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

### **RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this 42 U.S.C.§ 1983 action, Plaintiff, an inmate incarcerated at the Kilby Correctional Facility in Mt. Meigs, Alabama, when he filed this action, asserts that on August 16, 2013, he was a passenger in a transport van and was injured when the driver braked suddenly to avoid another vehicle.[1] When the van braked abruptly Plaintiff was thrown forward causing his head to hit a partition between the front and back of the van which caused injuries to his head, neck, and back. Plaintiff alleges claims of negligence and violations of his Eighth Amendment rights based on a failure to secure him with a seat belt during transport and a denial of adequate medical care for the injuries he sustained in the incident. Named as defendants are Security Officers Chris Faison and James Pickett, Dr. Sangeeta Doshi, and Nurse Marianne Baker. Plaintiff seeks monetary damages. Doc. #s 1, 2.

Defendants filed answers, special reports, and supporting evidentiary materials addressing Plaintiff's claims for relief. Doc. #s 11, 14, 15, 18, 19, 23.  Upon receipt of Defendants' special reports, the court issued an order directing Plaintiff to file a response, including sworn affidavits

---

[1] During the pendency of this action Plaintiff was released from custody.

and other evidentiary materials, and specifically cautioning Plaintiff that "the court may at any time thereafter and without notice to the parties (1) treat the special reports and any supporting evidentiary materials as motions for summary judgment." Doc. # 26 at 2. Plaintiff responded to Defendants' reports, *see* Doc. # 31, but his response does not demonstrate there is any genuine issue of material fact. The court will treat Defendants' reports as motions for summary judgment, and concludes these motions are due to be resolved in favor of Defendants.

## I. STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc*., 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322−324.

Defendants have met their evidentiary burden. Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at

324; Fed. R. Civ. P. 56(e)(3); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593−594 (11th Cir. 1995) (holding that, once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate there is a genuine dispute of material fact) (internal quotations omitted). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the non-moving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Educ.*, 495 F.3d 1306, 1313 (11th Cir. 2007).

Although factual inferences must be viewed in a light most favorable to the non- moving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Plaintiff's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

## II. DISCUSSION

### A. The Negligence/Deliberate Indifference Claim

Plaintiff complains Faison and Pickett were negligent and exhibited deliberate indifference to his safety when they failed to secure him with a seat belt during a vehicle transport. When the transport van suddenly braked to avoid another vehicle, Plaintiff was propelled forward into a partition which divided the front and back of the van causing injuries to his head, neck, and back. Doc. #s 1, 2.

Faison and Pickett are employees of Security Services, LLC, which contracts with the Alabama Department of Corrections to provide medical transportation for inmates who have offsite medical appointments. Doc. # 19, Eubanks Affidavit. These defendants' evidence includes an affidavit from Linda Eubanks, managing member of Security Services, LLC. According to Ms. Eubanks:

> My understanding stated in Paragraph 3 of my Affidavit dated October 29, 2013 regarding seat belt use was based upon an evolved understanding over the years. This evolved from communications between my husband, James Eubanks, and persons with the Department and Kilby who are no longer employed by either. Further, my husband has since deceased and we have continued to follow the understanding which was believed to be expressed to him. We have searched for a written policy or correspondence on this matter, to no avail. Upon contacting Associate Commissioner James Deloach to acquire a written policy, he expressed that the Department would rather seat belts be used on the inmates being transported, but confirmed there was no prior written policy. This issue has always been a source of unclear confusion; however, at this time, the Company's previous understanding is not the wishes of the Department. Nonetheless, up to this point in time, there has been no specific written policy set forth by the Department.

Doc. # 23, Eubanks Affidavit, Deloach Affidavit.

Marilyn Alexander, manager and supervisor of the Montgomery office of Security Services, LLC, states seatbelt use has come up several times over the years.[2] During those times she was involved in such discussions, Ms. Alexander affirms prison officials at Kilby asserted that seatbelts were not to be used on inmates during their transport because they were already restrained with handcuffs, belly chains, and leg irons. On the day of the incident about which Plaintiff complains, Ms. Alexander affirms Faison and Pickett transported Plaintiff without a seatbelt based on Security Services, LLC, understanding that such was the policy of the ADOC for seatbelt use while transporting inmates. Even if this is a dispute of fact, it does not preclude summary judgment. Doc. # 23, Alexander Affidavit.

---

[2] Ms. Alexander has held this position with the company since it began its contract with the Department of Corrections in 2007. Doc. # 23, Alexander Affidavit.

Regarding Plaintiff's allegation of negligence against Faison and Pickett, this claim entitles him to no relief. Mere negligence by prison officials resulting in injury to an inmate under their care, however, does not amount to a constitutional violation. The Constitution is simply not implicated by negligent acts of officials. *Daniels v. Williams*, 474 U.S. 327 (1986); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (mere negligence does not violate the Eighth Amendment); *Kelley*, 400 F.3d at 1285 (negligence insufficient to establish a constitutional violation); *Popham v. City of Talladega*, 908 F.2d 1561, 1563 (11th Cir. 1990), citing *Molton v. City of Cleveland,* 839 F.2d 240, 243 (6th Cir. 1988) (plaintiff showed mere negligence which does not establish a ' 1983 claim).

Plaintiff also claims that Pickett and Faison's conduct in transporting him without securing him with a seatbelt constitutes deliberate indifference in violation of the Eighth Amendment. This claim likewise entitles him to no relief. An inmate who claims he was subjected to an unsafe condition of confinement must first make an objective showing that the deprivation was "sufficiently serious" to form the basis of an Eighth Amendment violation. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (citation omitted) ("The [objective component of an Eighth Amendment claim] is contextual and responsive to 'contemporary standards of decency'." Only extreme deprivations will support a conditions of confinement claim. *Id.* at 8–9. Second, an inmate must make a subjective showing that the deprivation resulted from a prison official's deliberate indifference to the inmate's health or safety. *Wilson v. Seiter*, 501 U.S. 294, 302–03 (1991). "Deliberate indifference" to an inmate's safety is shown when a prison official knows of a "substantial risk of serious harm" and with such knowledge disregards that excessive risk to inmate health or safety by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 828. Thus, in order to survive summary judgment, Plaintiff is "required to produce sufficient evidence of (1)

a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a " 'sufficiently culpable state of mind.' " *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991)....   [T]he prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists--and the prison official must also "draw that inference."   *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).

Here, the record contains no evidence that Pickett and Faison had knowledge of specific facts from which an inference could be drawn that a substantial risk of harm existed to Plaintiff, that they actually drew this inference, and thereafter ignored this risk.  Rather, the undisputed evidence reflects that Faison and Pickett transported Plaintiff without a restraint device as instructed by their employer based on the company's understanding of the policy and procedure attendant to seatbelt use during inmate transport. Under the circumstances, and without more, the conduct and actions of Faison and Pickett while transporting Plaintiff do not amount to knowingly subjecting Plaintiff to a substantial risk of serious harm. *See Stephens v. Johnson*, 83 F.3d 198, 201 (8th Cir. 1996) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)) ("To convert conduct that does not even purport to be punishment into conduct violative of the Eighth Amendment, 'more than ordinary lack of due care for the prisoner's interests or safety' must be shown."). Moreover, this Circuit  has determined that transportation of inmates without seat belts, alone, does not rise to the level of a constitutional violation. *Smith v. Sec'y, Dept. of Corr.*, 252 Fed.Appx. 301, 304 (11th Cir. 2007) (*citing Chandler v. Crosby*, 379 F.3d 1278, 1289–90 (11th Cir. 2004) ("[R]iding in a van equipped with the manufacturer's car seats, seat belts, and windows is [not] a necessity, such that riding in a van without these characteristics is a deprivation of the minimal

measure of life's necessities or is something that modern society would find intolerable."). *See also Dexter v. Ford Motor Co.*, 92 Fed.Appx. 637, 643 (10th Cir. 2004) (holding that "failure to seatbelt an inmate does not violate the Constitution"); *Spencer v. Knapheide Truck Equip. Co.*, 183 F.3d 902, 906 (8th Cir. 1999) (failure to provide seatbelts or other safety restraints in patrol wagon did not constitute policy that presented a substantial risk of serious harm); *Ingram v. Herrington*, 2007 WL 2815965 (W.D. Ky. Sep. 26, 2007) (holding that "the weight of authority from other circuits requires a finding that no Eighth Amendment violation occurs simply by transporting a prisoner unseatbelted in a prison vehicle,"). In light of this Circuit's decision in *Smith, supra*, and a lack of evidence which shows that the August 16, 2013, incident occurred due to any deliberate indifference or reckless disregard by Faison or Pickett regarding the safety of Plaintiff, summary judgment is due to be granted in their favor.

### B. Medical Claim

#### i. Defendants Faison and Pickett

Next, Plaintiff complains about the medical treatment he received after the accident. He states he was not in pain right after his head hit the partition in the van. Following a stop to pick up another inmate being transported back to Kilby, however, Plaintiff claims he felt severe pain and communicated this to Faison and Pickett. Instead of taking him to a free world hospital for treatment, Plaintiff complains Faision and Pickett transported him back to Kilby. According to the complaint, the transport officers had notified medical staff at Kilby about the incident in the van. Plaintiff further alleges he was "denied and delayed medical treatment due to the incident" and that on August 23, 2013, he submitted a second request for medical care due to continued pain. Before then, on August 20, 2013, Plaintiff states he fell and was placed in the infirmary for twenty-four hour observation but was not seen by a doctor which amounted to another delay in medical

care. Doc. # 1 at 4-7.

Consistent with the allegations made in the complaint, Faison and Pickett assert Plaintiff initially indicated he was okay after hitting his head on the glass partition in the van. Approximately ten minutes later Plaintiff complained of a headache. On arrival at Kilby, Faison and Pickett took Plaintiff to the infirmary to be examined by medical personnel and were advised Plaintiff would be treated and returned to his dorm. Doc. # 23, Faison and Pickett Affidavits.

"The Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs." *Campbell v. Sikes*, 169 F.3d 1353, 1363 (11th Cir. 1999) (*citing Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To demonstrate a denial of medical care in violation of the Eighth Amendment, Plaintiff must prove both an objective and subjective component. The objective element requires Plaintiff to demonstrate the existence of an "objectively serious medical need." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir.2003). A serious medical need is " 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.' " *Id*. (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)). "In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." *Id*. (internal quotation marks and citation omitted). The subjective component of Plaintiff's medical claim requires that he demonstrate "deliberate indifference" to a serious medical need. *Farrow*, 320 F.3d at 1243. Deliberate indifference is shown by establishing that a defendant had actual knowledge or awareness of an obvious risk to a plaintiff's serious medical need and failed to take steps to abate that risk. It may be demonstrated by either actual intent or reckless disregard. *See Farmer*, 511 U.S. at 834. Reckless disregard occurs when a defendant "knows of and disregards an excessive

risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference." *Id*. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference). "[A]an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. Additionally, where a plaintiff complains of delay in medical treatment, he has the burden of establishing that he suffered a significant effect from the delay. *See Hill*, 40 F.3d at 1188.

A review of Plaintiff's medical records reflects that after he returned to Kilby from his offsite medical appointment he received a body chart. Medical staff noted mild swelling on his forehead. Plaintiff received an ice pack and was advised to return to the medical unit if his symptoms persisted. Doc. # 14, Exh. A - Baker Affidavit & Plaintiff's Medical Records at 9, 10, 12, 13.

Plaintiff offers no evidence tending to show that Faison or Pickett demonstrated deliberate indifference to Plaintiff's medical needs by intentionally or deliberately delaying his ability to receive necessary medical treatment or by interfering with his ability to access such treatment. Although Plaintiff claims Pickett and Faison acted with deliberate indifference by failing to immediately take him to a free world hospital after he complained of severe pain from hitting his head, assuming this was a viable course of action, Plaintiff submits no evidence that such action was necessary or warranted. Plaintiff's medical records show his condition was appropriately evaluated and treated by prison medical staff and he has produced no evidence that he suffered

any detrimental effect from any delay in transporting him to Kilby for treatment of his injuries. While the record shows Faison and Pickett were aware of the fact that Plaintiff hit his head in the van and complained of pain and/or a headache, the evidence before the court falls far short of demonstrating the degree of "deliberate indifference" to Plaintiff's medical needs required to demonstrate they knew that Plaintiff faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. *See Farmer*, 511 U.S. 825. Accordingly, Defendants Faison;s and Pickett's motion for summary judgment on Plaintiff's Eight Amendment claim is due to be granted.

### ii. Defendants Baker and Doshi

Plaintiff complains Defendants Baker and Doshi [the "medical defendants"] exhibited deliberate indifference to his serious medical needs "where [he was] denied and delayed medical treatment." To support this claim, Plaintiff maintains he had to wait three days to see a doctor after hitting his head in the transport van. Doc. #s 1, 31.

> In articulating the scope of inmates' right to be free from deliberate indifference, . . . . the Supreme Court has . . . emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787. Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference). Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir. 1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Taylor Adams*, 221 F.3d  1254, 1258

(11th Cir. 2000) (citation and internal quotations omitted) (To show deliberate indifference, a plaintiff must demonstrate a serious medical need and then must establish that the defendants' response to the need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law."). Moreover, "as *Estelle* teaches, whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (an inmate's allegation that prison physicians did not diligently pursue alternative means of treating condition did not rise beyond negligence to the level of deliberate indifference); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (mere fact inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (prison medical personnel do not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with that of the inmate-patient).

An official also acts with deliberate indifference when he intentionally delays providing an inmate with access to medical treatment, knowing the inmate has a life-threatening or urgent medical condition that would be exacerbated by delay. *See Hill*, 40 F.3d at 1186-87, *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002); *see also Harris v. Coweta County*, 21 F.3d 388, 394 (11th Cir. 1994). "In contrast, delay or even denial of medical treatment for superficial, non-serious physical conditions does not constitute an Eighth Amendment violation." *Hill*, 40 F.3d at 1186–87.  A medical need is considered serious when delay in treatment results in an

inmate suffering "a lifelong handicap or permanent loss." *Monmouth County Corr. Inst. Inmates v. Lorenzo*, 834 F.2d 326, 347 (3rd Cir. 1987). An inmate claiming an unconstitutional delay in medical treatment "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Hill*, 40 F.3d at 1188.

> According to Defendant Baker:
>
> When [Plaintiff] returned to the correctional facility he was seen in the HCU where a body chart was performed at 2:35 p.m. by the LPN on duty. [Plaintiff] was noted to have mild swelling on his forehead, was given an ice pack and told to return to the medical unit if his symptoms persisted.
>
> [Plaintiff] was again seen by the nurse on duty on August 17, 2013. Thereafter, an appointment was made for [Plaintiff]to have x-rays taken.
>
> On August 19, 2013 an x-ray was taken of [Plaintiff's] thoracic spine. The results of the x-rays stated as follows:
>
>> Results: There are no acute abnormalities of alignment. There was no radiographic evidence of acute fracture. There are no gross lytic or blastic bone lesions. There is no bone narrowing of the spinal canal.
>>
>> Conclusion: There is no radiographic evidence of acute disease in the visualized thoracic spine. If there is continued clinical concern, then cross sectional imaging follow-up is recommended.
>
> I, as the Nurse Practitioner, personally saw and evaluated [Plaintiff] on August 19, 2013. Plaintiff was complaining of headaches, neck pain, and dizziness.
>
> A full history was taken of Plaintiff and a treatment plan was formulized with regards to his medical concerns. Plaintiff was prescribed Tylenol, Naprosyn and Robaxin for his pain.
>
> [Plaintiff] was thereafter seen at the healthcare unit where a physical assessment was performed on August 20, 2013. The physical examination performed by the nurse revealed that no swelling, redness, or bruises existed at that time. [Plaintiff] was continuing to complain of headaches and dizziness. The nurse noted that the inmate, [Plaintiff], was verbally abusive.
>
> [Plaintiff] completed a Health Services Request Form on August 20, 2013 stating that he was continuing to experience headache and neck pain. I personally responded to [Plaintiff's] health care request on August 21, 2013 setting forth that [Plaintiff] had been seen and evaluated and further x-rays had in fact been ordered.

[Plaintiff] was thereafter seen on August 21, 2013 when he was again seen and evaluated by the nursing staff at Kilby.

[Plaintiff] completed another Health Services Request Form on August 22, 2013 stating that he was continuing to experience headaches as well as back pain.

A follow-up x-ray was taken of [Plaintiff's] cervical spine on August 23, 2013. The results of the cervical spine x-ray set forth as follows:

> Results: Views of the cervical spine demonstrate no fracture, dislocation or bony reaction. The alignment of the vertebral bodies is anatomic. No prevertebral soft tissue swelling is seen. There is no foreign. body present. C-7 is not well visualized.
>
> Conclusion: Grossly unremarkable cervical spine series. Correlate with CT for greater detail, as determined indicated, particularly if there ongoing concern for acute fracture.

Images were also taken of [Plaintiff's] skull or August 23, 2013. The radiological report from the images taken of [Plaintiff's] skull on August 23, 2013 set forth as follows:

> Results: Multiple views of the skull demonstrate normal ossification pattern. There is no lenient or depressed fracture. The orbits are grossly intact.
>
> Conclusion: Grossly unremarkable skulL Correlate with CT for greater detail, as deemed indicated, particularly if there is ongoing concern for acute fracture.

I again personally saw and evaluated [Plaintiff] on August 23, 2013. [Plaintiff] continued to complain of extreme pain despite being prescribed Robaxin, Naproxen, and Tylenol.

[Plaintiff] completed another Health Services Request Form on September 10, 2013 indicating that he was still having problems with his head, neck, and back.

[Plaintiff] was once again seen and evaluated at the health care unit at Kilby on September 11, 2013. Plaintiff continued to report that he was having pain in his neck and upper back as he attributed to the automobile accident in the correctional vehicle some three weeks prior. Plaintiff denied numbness or paralysis. [Plaintiff's] medications were continued.

[Plaintiff] completed another Health Services Request Form on September 15, 2013 requesting to see an outside neurologist for his medical complaints.

> [Plaintiff] thereafter was seen on September 16, 2013 where he was again evaluated by a nurse at the health care unit.
>
> On September 20, 2013 [Plaintiff] submitted a Health Services Request Form stating that he was continuing to experience pain in his neck, back, and head due to the prior automobile accident. He stated the medications he was receiving were not working and he was requesting stronger medications for his alleged pain and suffering.
>
> I thereafter personally saw [Plaintiff] at the health care unit and performed a physical examination on [Plaintiff] on September 23, 2013. [Plaintiff] continued to complain of pain in his head, neck and upper back. Plaintiff reported that the analgesic balm and the pain medications were helping. [Plaintiff] was diagnosed with muscular skeletal pain, whiplash, which would slowly resolve, and possible muscle spasms. [Plaintiff's] prescription for Naproxen, Prilosec and Robaxin were continued.
>
> Subsequent to [Plaintiff's] automobile accident on August 16, 2013 he received multiple x-rays and has been seen on numerous occasions for his complaints of head/neck and back pain. All of the x-rays have been negative, [Plaintiff] shows no sign of having any objective medical issues besides back and neck sprain. [Plaintiff] has been prescribed and has received appropriate medications for his medical concerns.

Doc. # 14, Exh. A – Baker Affidavit.

Assuming the existence of a serious medical need, the court finds under the circumstances of this case, that the course of treatment undertaken by the medical defendants in addressing Plaintiff's medical condition did not violate his constitutional rights. The evidentiary materials filed by the medical defendant address the claim made by Plaintiff alleging a denial and delay of adequate medical treatment following the incident in the transport van.  A thorough review of these documents demonstrates that the affidavits submitted by the medical defendants regarding the material facts are corroborated by the contemporaneously compiled objective medical records. The law is well settled that "[s]elf serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records."  *Whitehead v. Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010) (citing *Bennett v. Parker*, 898 F.2d 1530 (11th

Cir. 1990)).

The medical defendants affirm that at no did they refuse or delay medical treatment for Plaintiff's medical concerns and maintain that at all time he received appropriate care for his complaints of head, neck, and back pain. The medical defendants' course of treatment shows a good faith effort by prison medical staff to address Plaintiff's medical needs. The medical care he received was certainly not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the fundamental fairness." *Harris*, 941 F.2d at 1505. Even assuming, *arguendo*, any delay by the medical defendants in treating Plaintiff, there is no verifying medical evidence which establishes this delay resulted in any detriment to him. *See Hill*, 40 F.3d at 1187-89. Further, as explained, that an inmate feels that he did not get the level of medical attention he preferred or desired does not, as a matter of law, constitute deliberate indifference. "[T]he essential test is one of medical necessity and not one simply of desirability." *Woodall v. Foti*, 648 F.2d 268, 272 (5th Cir. 1981); *Adams*, 61 F.3d at 1545-1546; *Hamm*, 774 F.2d at 1575.

It is undisputed that Plaintiff received treatment for his medical condition and had access to prison medical personnel during his confinement at Kilby. It is likewise evident that the medical defendants rendered treatment to Plaintiff in accordance with their professional judgment. Moreover, Plaintiff has presented no evidence which indicates these defendants knew that the manner in which they provided treatment created a substantial risk to his health and that with this knowledge consciously disregarded such risk. *See Johnson v. Quinones*, 145 F.3d at 168. The record contains no evidence, significantly probative or otherwise, showing that the medical defendants acted with deliberate indifference to Plaintiff's medical needs. The medical defendants are due to granted summary judgment on this claim. *Carter*, 352 F.3d at 1350.

### III. CONCLUSION

In light of the foregoing, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants' motions for summary judgment (Docs. 14, 19, 23) be GRANTED;

2. This case be DISMISSED with prejudice;

3. Judgment be ENTERED in favor of Defendants;

It is further ORDERED that **on or before September 1, 2016**, the parties may file objections. Any objections filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which the parties object. Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 17th day of August 2016.

/s/Terry F. Moorer  
TERRY F. MOORER  
UNITED STATES MAGISTRATE JUDGE